# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| MINING PROJECT WIND DOWN | § | Chapter 11 |
| HOLDINGS, INC. (f/k/a Compute North | § | |
| Holdings, Inc.), *et al.*,[1] | § | Case No. 22-90273 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| ──────────────────────────── | § | |
| | § | |
| TRIBOLET ADVISORS LLC, in its | § | |
| capacity as Plan Administrator and Trustee | § | **Adv. Proc. No. 23-03210** |
| for the Mining Project Wind Down | § | |
| Holdings, Inc. Litigation Trust, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| CORPUS CHRISTI ENERGY PARK, LLC | § | |
| and BOOTSTRAP ENERGY, LLC, | § | |
| | § | |
| Defendants. | § | |

# DEFENDANTS' FIRST AMENDED
# ANSWER TO COMPLAINT AND COUNTERCLAIM

---

[1] The Reorganized Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Mining Project Wind Down Holdings, Inc. (f/k/a Compute North Holdings, Inc.) (4534); Mining Project Wind Down LLC (f/k/a Compute North LLC) (7185); Mining Project Wind Down Corpus Christi LLC (f/k/a CN Corpus Christi LLC) (5551); Mining Project Wind Down Atoka LLC (f/k/a CN Atoka LLC) (4384); Mining Project Wind Down BS LLC (f/k/a CN Big Spring LLC) (4397); Mining Project Wind Down Colorado Bend LLC (f/k/a CN Colorado Bend LLC) (4610); Mining Project Wind Down Developments LLC (f/k/a CN Developments LLC) (2570); Mining Project Wind Down Equipment LLC (f/k/a CN Equipment LLC) (6885); Mining Project Wind Down King Mountain LLC (f/k/a CN King Mountain LLC) (7190); Mining Project Wind Down MDN LLC (f/k/a CN Minden LLC) (3722); Mining Project Wind Down Mining LLC (f/k/a CN Mining LLC) (5223); Mining Project Wind Down Pledgor LLC (f/k/a CN Pledgor LLC) (9871); Mining Project Wind Down Member LLC (f/k/a Compute North Member LLC) (8639); Mining Project Wind Down NC08 LLC (f/k/a Compute North NC08 LLC) (8069); Mining Project Wind Down NY09 LLC (f/k/a Compute North NY09 LLC) (5453); Mining Project Wind Down STHDAK LLC (f/k/a Compute North SD, LLC) (1501); Mining Project Wind Down Texas LLC (f/k/a Compute North Texas LLC) (1883); Mining Project Wind Down TX06 LLC (f/k/a Compute North TX06 LLC) (5921); and Mining Project Wind Down TX10 LLC (f/k/a Compute North TX10 LLC) (4238). The Reorganized Debtors' service address for the purposes of these chapter 11 cases is 2305A Elmen Street, Houston, TX 77019.

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

COME NOW Defendants Corpus Christi Energy Park, LLC ("CCEP") and Bootstrap Energy, LLC, ("Bootstrap") and, subject to and without waiving their previously filed Motion to Dismiss (as amended), file this First Amended Answer to Plaintiff's Complaint and Counterclaim. Defendants show the Court the following:

## I. ANSWER

### NATURE OF THE CASE

1. Defendants admit the factual allegations in paragraph 1 but deny any characterization, wherever appearing in the Complaint, of the subject transfers and obligations as being "preferential" or "fraudulent" and oppose all claims brought by Plaintiff.

2. Defendants admit the first sentence of paragraph 2. Defendants deny the remaining allegations in paragraph 2.

3. Defendants deny the allegations in paragraph 3.

4. Defendants deny the allegations in paragraph 4.

5. Defendants admit the allegations in paragraph 5.

### JURISDICTION AND VENUE

6. Defendants admit the allegations in paragraph 6.

7. Defendants admit the allegations in paragraph 7.

8. Defendants admit the allegations in paragraph 8.

9. Defendants admit the allegations in paragraph 9.

### PARTIES

10. Defendants admit the allegations in paragraph 10.

11. Defendants admit the allegations in paragraph 11.

12. Defendants admit the allegations in paragraph 12.

## PROCEDURAL BACKGROUND

13. Defendants admit the allegations in paragraph 13.

14. Defendants admit the allegations in paragraph 14.

15. Defendants admit the allegations in paragraph 15.

## FACTUAL BACKGROUND

16. Defendants admit the allegations in paragraph 16.

17. Defendants admit the allegations in paragraph 17, except as to the "most significant" description of the agreements. Defendants also deny the final sentence of paragraph 17 to the extent it is meant to imply there were no conditions precedent to the enforceability of CCEP's obligations, or that those conditions had been entirely satisfied.

18. Defendants admit the allegations in paragraph 18.

19. Defendants deny the allegations in the first and last sentences of paragraph 19. Defendants admit the remaining allegations in paragraph 19.

20. Defendants admit the allegations in paragraph 20 but deny any implication that CCEP's alleged performance obligations were not contingent upon CNCC's continued performance of its own obligations.

21. Defendants admit the allegations in the first two sentences of paragraph 21. Defendants deny the remaining allegations in paragraph 21.

22. Defendants deny the allegations in paragraph 22.

23. Defendants deny the allegations in paragraph 23.

24. Defendants admit the allegations in paragraph 24 regarding the "draft AEP Letter Agreement" but have no personal knowledge regarding CNCC's assessment of CCEP as an "attractive partner" or its knowledge of CCEP's prior projects and therefore must deny the remaining allegations.

25. Defendants deny the allegations in paragraph 25.

26. Defendants deny the allegations in paragraph 26.

27. Defendants deny the allegations in paragraph 27.

28. Defendants admit the allegations in paragraph 28.

29. Defendants admit the allegations in paragraph 29 but deny that the CCEP's June 16, 2022 notice was sent "in response" to CNCC's June 7 letter.

30. Defendants admit the allegations in the first sentence of paragraph 30 but deny the AEP Letter Agreement was "unsatisfactory" or had "material" or "adverse" changes. Defendants deny all remaining allegations in paragraph 30.

31. Defendants admit the allegations in paragraph 31.

32. Defendants deny the allegations in paragraph 32.

33. Defendants deny the allegations in paragraph 33.

34. Defendants admit the first sentence in paragraph 34. Defendants deny the remaining allegations in paragraph 34.

35. Defendants admit the allegations in paragraph 35.

36. Defendants deny the allegations in the first sentence of paragraph 36. Defendants deny the remaining allegations in paragraph 36 to the extent the allegations are inconsistent with the contents of the original document to which they refer.

37. Defendants deny the allegations in the first sentence of paragraph 37. Defendants admit the remaining allegations in paragraph 37.

38. Defendants admit the allegations in paragraph 38.

## CAUSES OF ACTION

### Count One
### (Breach of Contract)

39. Defendants deny the allegations in paragraph 39.

40. Defendants admit the allegations in paragraph 40.

41. Defendants deny the allegations in paragraph 41.

42. Defendants deny the allegations in paragraph 42.

43. Defendants deny the allegations in paragraph 43.

44. Defendants deny the allegations in paragraph 44.

45. Defendants deny the allegations in paragraph 45.

### Count Two
### (Violations of the Automatic Stay)

46. Defendants deny the allegations in paragraph 46.

47. Defendants admit the allegations in paragraph 47.

48. Defendants deny the allegations in paragraph 48.

49. Defendants deny the allegations in paragraph 49.

50. Defendants deny the allegations in paragraph 50.

51. Defendants deny the allegations in paragraph 51.

### Count Three
### (Avoidance of Preferential Transfers – 11 U.S.C. § 547(b))

52. Defendants deny the allegations in paragraph 52.

53. Defendants deny the allegations in paragraph 53.

54. Defendants deny the allegations in paragraph 54.

55. Defendants deny the allegations in paragraph 55.

56. Defendants deny the allegations in paragraph 56.

57. Defendants deny the allegations in the first sentence of paragraph 57. Defendants admit to the rebuttable presumption of insolvency pursuant to 11 U.S.C. § 547(f) but deny that CNLLC, the alleged transferor, was insolvent at the time of the transfers in question.

58. Defendants lack the ability to admit or deny the allegations in paragraph 58 at this time, and so Defendants must deny this paragraph.

59. Defendants deny the allegations in paragraph 59.

## Count Four
### (Avoidance of Constructive Fraudulent Transfers – 11 U.S.C. § 548(a))

60. Defendants deny the allegations in paragraph 60.

61. Defendants deny the allegations in paragraph 61.

62. Defendants deny the allegations in paragraph 62.

63. Defendants admit the allegations in paragraph 63 regarding the timing of transfers but deny the characterization of the transfers as "fraudulent."

64. Defendants deny the allegations in paragraph 64.

65. Defendants deny the allegations in paragraph 65.

66. Defendants lack the ability to admit or deny the allegations in paragraph 66 at this time, and so Defendants must deny this paragraph.

67. Defendants deny the allegations in paragraph 67.

## Count Five
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

68. Defendants deny the allegations in paragraph 68.

69. Defendants deny the allegations in paragraph 69.

70. Defendants deny the allegations in paragraph 70.

71. Defendants deny the allegations in paragraph 71.

**Count Six**
**(Objection to CCEP's Proof of Claim No. 10057 – 11 U.S.C. § 502)[2]**

72. CCEP denies the allegations in paragraph 72.

73. CCEP denies the allegations in paragraph 73.

74. CCEP denies the allegations in paragraph 74.

75. CCEP denies the allegations in paragraph 75.

76. CCEP admits the allegations in paragraph 76 as to the contents of the Confirmation Order but deny their relevance or applicability.

77. CCEP admits the allegations in paragraph 77 as to the contents of the Liquidation Trust Agreement but deny their relevance or applicability.

78. CCEP admits the allegations in paragraph 78.

79. CCEP admits the allegations in paragraph 79.

80. CCEP denies the allegations in paragraph 80.

81. CCEP denies the allegations in paragraph 81.

82. CCEP denies the allegations in paragraph 82.

83. CCEP denies the allegations in paragraph 83.

84. CCEP denies the allegations in paragraph 84.

85. CCEP denies the allegations in paragraph 85.

86. CCEP denies the allegations in paragraph 86.

**Count Seven**
**(Attorneys' Fees – against CCEP only)**

87. Defendants deny the allegations in paragraph 87.

88. Defendants deny the allegations in paragraph 88.

---

[2] The objection to Bootstrap's proof of claim has been dismissed. *See* Dkt. 28.

89. Defendants deny the allegations in paragraph 89. Defendants specifically deny that Plaintiff presented its claim to Defendants and that Defendants failed to pay the just amount owed to Plaintiff. Bootstrap was not a party to the DB Contract. CCEP fully performed its obligations until it properly stopped work pursuant to CNCC's material defaults in failing to pay CCEP. Defendants' defenses are stated in further detail in their Affirmative Defenses below.

90. Defendants deny the allegations in paragraph 90.

## II. AFFIRMATIVE DEFENSES

### FACTUAL BACKGROUND

91. The factual allegations that follow are provided in support of each and every Affirmative Defense asserted by Defendants.

92. On March 16, 2022, CNCC and CCEP contracted for construction of Phase 1 of the "Corpus Christi Energy Park" at 1290 McKinzie Road, Corpus Christi, TX 78410 on a 33.5 acre portion of land, which was part of a larger, 114 contiguous acre tract of land that was, at the time, owned entirely and solely by Bootstrap. The 33.5 acre portion on which CNCC's anticipated facility would be located was described in Exhibit A to the DB Contract. The multi-phase project consisted of two separate and independent cryptocurrency mining projects on separate tax lots. Each lot had its own local agreement pursuant to the provisions of Section 42.044 of the Texas Local Government Code and City Ordinance No. 15898. Therefore, CNCC's future facility was only going to occupy a fraction of the land which Bootstrap had been developing and promoting as the "Corpus Christi Energy Park" project. CNCC had zero interest, zero involvement, and zero contractual rights regarding Phase 2 or its associated 80.5 acres.

93. The DB Contract included a "time is of the essence" clause.

94. The AEP letter agreement was not included in the DB Contract's list of obligations to which the "time is of the essence" clause was applicable.

95. On June 3, 2022, CNCC failed to timely pay a change order it had agreed to and executed on May 12, 2022. The change order called for an initial payment to CCEP in the amount of $718,996.56.

96. On June 16, 2022, CCEP exercised its right to issue a "stop work" notice due to CNCC's breach. CNCC did not cure the breach pertaining to the May 12 change order until August 30, 2022.

97. On August 26, 2022, CNCC defaulted on a separate obligation under the DB Contract. Specifically, CNCC failed to pay CCEP $6,100,000 for completion of milestone #3. CCEP issued a stop work notice as to this default on September 2, 2022.

98. CCEP allowed CNCC all applicable opportunities to cure the August 26, 2022 default as called for in the DB Contract. CNCC wholly failed to cure the August 26, 2022 default and CCEP gave notice of its intent to terminate the DB Contract. CCEP took all contractual steps to perfect its right to terminate, needing only to wait until the close of business on September 22 before it could formally do so. On the afternoon of September 21, CNCC called CCEP asking if it would waive termination should the cure payment be received on September 23. However, CNCC filed for bankruptcy relief the following morning, September 22, only hours before CCEP's termination of the DB Contract. As of the Petition Date, $14,906,026 in payments remained unpaid under the DB Contract to reach final completion.

99. CNCC never terminated the DB Contract prior to the Petition Date nor did it ever instruct CCEP to stop work on the project. CNCC repeatedly and consistently asked CCEP to continue its work under the DB Contract, even after the alleged acts, omissions, or events constituting CCEP's alleged "breaches" of the DB Contract.

100. In the Bankruptcy Case, Debtors held an auction for the sale of their assets. In this auction, Debtors represented to all bidders, potential bidders, and the Defendants that the AEP letter CCEP had previously furnished was acceptable and sufficient to satisfy the DB Contract.

101. CCEP was the only bidder for the DB Contract. CCEP placed bids on the DB Contract on October 26 and 27, both of which were rejected by Debtors. At no point in the Bankruptcy Case were the Debtors capable of assuming the DB Contract per the requirements of 11 U.S.C. § 365.

102. During the pendency of the case, Bootstrap made a LinkedIn post inviting event attendees to inquire about the Corpus Christi Energy Park, and the attributes of the energy park campus and the design-build structure employed for the first phase. At no time did Bootstrap advertise, represent, or claim to any third party that the portion of the project anticipated for CNCC's facility was not subject to the Compute North reorganization.

103. The Transformer PO was a separate agreement that did not have anything to do with CNCC, the DB Contract, or the facility contemplated by the DB Contract.[3] Pursuant to the Transformer PO, CN LLC agreed to purchase a transformer from Bootstrap. In turn, Bootstrap contracted to buy the required transformer from Recon Development, LLC ("Recon"), who was procuring the transformer from the manufacturer in Brazil. The Slot Reservation Payment reserved a slot in the manufacturer's production schedule so it could begin designing and procuring materials to build the transformer. The Slot Reservation Payment was the first of many milestone payments under the Transformer PO agreement. CN LLC failed to pay any of the subsequent milestone payments and defaulted on the Transformer PO agreement.

---

[3] Defendants understand that, being a successor-in-interest with no personal experience in the transactions between Debtors and Defendants, Plaintiff has had to become acquainted with the assets it is administering via secondhand sources. Nevertheless, this distinction between the Transformer PO and DB Contract has been explained to Plaintiff and its counsel *many* times, but still Plaintiff continues to make these false allegations to the contrary.

104. CN LLC's breach of the Transformer PO agreement caused Bootstrap to be financially unable to pay Recon for the transformer. Recon asserted claims against Bootstrap for the balance of what Bootstrap agreed to pay Recon. The transformer in question was never built by the manufacturer nor was it ever delivered to Recon or Bootstrap.

105. CNCC's breach of the DB Contract and CN LLC's breach of the Transformer PO caused Defendants to retain counsel to pursue and defend claims in this case. Defendants have agreed to pay their counsel for all legal services performed in this case.

## AFFIRMATIVE DEFENSES

106. Plaintiff's claims for violation of automatic stay, constructively fraudulent transfers, and its claim objection are, for each claim, barred for failure to state facts sufficient to support a cause of action.

107. Plaintiff's claim for breach of the DB Contract is barred, in whole or in part, by the doctrine of estoppel and waiver to the extent Plaintiff's claim relies upon arguing any actions by CCEP after the Petition Date waived any rights, obligations, or defenses CCEP has with respect to the DB Contract. Such statements are contradicted by Debtors' prior statements, which Defendants relied on to their detriment, that CCEP reserved and may assert in this case all its rights, claims, causes of action, and defenses under the DB Contract.

108. Plaintiff's claim for breach of the DB Contract is barred, in whole or in part, by the doctrine of estoppel and waiver to the extent Plaintiff's claim is contradicted by prior statements regarding the AEP letter that Debtors made to all bidders, potential bidders, and Defendants during the Debtors' auction, i.e., that the letter CCEP delivered was satisfactory and sufficient to comply with the alleged requirements of the DB Contract.

109. Plaintiff's claim for breach of the DB Contract is barred by the doctrines of estoppel and waiver on the grounds that Debtors represented to bidders, potential bidders, and Defendants in Debtors' Bankruptcy Case that the AEP letter allegedly tendered by CCEP was, in fact, satisfactory and sufficient to satisfy or comply with the alleged requirements of the DB Contract.

110. Plaintiff's claim for breach of the DB Contract is barred by the doctrine of waiver on the grounds that CNCC waived any alleged breach pertaining to the AEP letter when it instructed or allowed CCEP to continue performing under the DB Contract.

111. Plaintiff's claim for breach of the DB Contract is barred, in whole or in part, on the basis that any breach of contract by CCEP was immaterial as the alleged obligations pertaining to the AEP letter were not part of the time is of the essence clause of the DB Contract.

112. Plaintiff's claim for breach of the DB Contract is barred by CNCC's prior material breach of the DB Contract for CNCC's failure to make required milestone payments that were conditions precedent to CCEP's performance obligations.

113. Plaintiff's claim for breach of the DB Contract is barred by CNCC's fraud because CNCC misled or concealed its financial condition from CCEP to stave off CCEP's termination of the DB Contract. CNCC could reasonably foresee that CCEP would detrimentally rely on CNCC's concealments and nondisclosures in delaying the termination of the DB Contract and continuing to perform and, in light thereof, it would be unjust to allow CNCC to recover against CCEP under the DB Contract.

114. Plaintiff's claim for breach of the DB Contract is barred by estoppel in that CCEP foreseeably relied, to its detriment and injury, on CNCC's promises—which it continually made right up until the Petition Date—to pay for the contemplated goods and services, and it would be manifestly unjust to allow Plaintiff to recover in these circumstances.

115. Plaintiff's claims are barred, in whole or in part, by the doctrine of statute of frauds on the grounds that any alleged agreement for CCEP to convey any real estate to CNCC *prior to* CNCC's performance of conditions precedent, i.e., making the relevant milestone payment under the DB Contract, would be an unenforceable agreement under the statute of frauds.

116. Plaintiff's claims for breach of the DB Contract, violation of the automatic stay, preferential transfers, and constructively fraudulent transfers are subject to an offset for CCEP's damages related to CNCC's breaches of the DB Contract, Bootstrap's damages related to CN LLC's breaches of the Transformer PO, as well as Bootstrap's damages incurred for weekly storage fees Bootstrap paid to a third party facility for storage of two transformers (unrelated to the Transformer PO) that CN LLC had purchased from Bootstrap under a separate agreement. CN LLC failed to timely retrieve those transformers which caused Bootstrap to incur damages in the form of additional weekly storage fees.

117. Plaintiff's claim for violation of the automatic stay is barred by the doctrine of laches as Debtors and Plaintiff both failed to timely act to remedy any alleged violation of the automatic stay, or to demonstrate how Defendants attempted to exercise control over any purported asset of the estate versus marketing its separately owned interests in the remaining two-thirds of the Energy Park property.

118. Plaintiff's claim for violation of the automatic stay is barred by estoppel and waiver on the grounds that the imminence and inevitability of Debtors' abandonment of its interest in the DB Contract at the time of the alleged actions giving rise to this claim preclude any contention that Defendants acted in contempt of either the automatic stay or of this Court, or that Defendants acted willfully, or harmed the Debtors' estate.

119. Plaintiff's claims for recovery of payments under the Transformer PO are barred by estoppel in that Defendants foreseeably relied, to their detriment and injury, on Debtors' promises to pay for Defendants' goods and services and it would be manifestly unjust to allow Plaintiff to recover on behalf of Debtors in these circumstances.

120. Plaintiff's claims for recovery of preferential transfers are barred on the grounds of contemporaneous or subsequent exchanges of new value. All alleged preferential transfers were in exchange for goods and services that Bootstrap or CCEP provided to its respective counterparty at or near the time of the payment.

121. Plaintiff's claim for recovery of the alleged $7,000.00 per week payments described in paragraph 34 of the Petition is barred on the grounds of contemporaneous or subsequent exchanges of new value and that the payments were made in the ordinary course of the parties' business dealings pertaining to Bootstrap's storage of the CN LLC's transformers.

122. Plaintiff's claim for recovery of constructively fraudulent transfers is barred on the grounds that all payments were made as part of exchanges of reasonable equivalent value.

123. Plaintiff's claim for recovery of constructively fraudulent transfers is barred on the grounds the transfers were accepted for value and in good faith.

### III. COUNTERCLAIM FOR ATTORNEYS' FEES

124. Defendant CCEP requests that Plaintiff pay CCEP all its attorneys' fees and expenses incurred in this litigation pursuant to the DB Contract (as defined in the Complaint).

### PRAYER

WHEREFORE, Defendants request that the Court enter orders and final judgment (a) denying all relief requested by Plaintiff, (b) ordering that Plaintiff take nothing in its suit against Defendants, (c) granting CCEP its attorneys' fees and expenses against Plaintiff, and (d) granting Defendants all such further relief at law or equity to which they may be entitled.

Dated:  April 22, 2024.                    Respectfully submitted,

                                                  By:  */s/Mark A. Castillo*
                                                    Mark A. Castillo
                                                        Texas State Bar No. 24027795
                                                        Southern Dist. Admin. No. 31520
                                                    Robert C. Rowe
                                                        Texas State Bar No. 24086253
                                                        Southern Dist. Admin. No. 3782278
                                                   **CARRINGTON, COLEMAN, SLOMAN**
                                                     **& BLUMENTHAL, L.L.P.**
                                                  901 Main Street, Suite 5500
                                                  Dallas, TX  75202
                                                  Telephone: 214-855-3000
                                                  Facsimile: 214-580-2641
                                                  Email: markcastillo@ccsb.com
                                                              rrowe@ccsb.com

                                                  *Counsel for Defendants*
                                                  *Corpus Christi Energy Park, LLC*
                                                  *and Bootstrap Energy, LLC*

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that on April 22, 2024, a true and correct copy of the foregoing document was properly served by ECF on all parties in this case or their counsel of record.

                                                  */s/Robert C. Rowe*
                                                  Robert C. Rowe