United States Bankruptcy Court
Southern District of Texas
**ENTERED**
December 11, 2025
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 22-90273 |
| MINING PROJECT WIND | § | |
| DOWN HOLDINGS INC., *et al.*, | § | CHAPTER 11 |
| | § | |
| Debtors. | § | |
| | § | |
| TRIBOLET ADVISORS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 23-3210 |
| | § | |
| CORPUS CHRISTI ENERGY | § | |
| PARK, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Compute North Corpus Christi entered into a contract with Corpus Christi Energy Park, LLC ("CCEP") to design and build a data-center facility. Tribolet, in its capacity as Plan Administrator and the Litigation Trustee of the Mining Project Wind Down Holdings, Inc. Litigation Trust, commenced this adversary proceeding alleging that CCEP breached the contract and diverted Compute North's funds to build its own facilities. CCEP moves to dismiss certain claims.

CCEP's motion to dismiss is granted with respect to turnover; it is denied with respect to the other claims.

## FACTUAL BACKGROUND

For the purposes of a motion to dismiss for failure to state a claim, the Court assumes that the well-pled plausible factual allegations are true. *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). This

background is based on the well-pled plausible allegations in the Second Amendment Complaint filed on August 7, 2025. ECF No. 79.

Compute North Corpus Christi and its affiliates developed cryptocurrency mining facilities. In 2022, Compute North pursued construction of a 300-megawatt data-center project in Corpus Christi, Texas. ECF No. 79 at 6.

To accomplish this, Compute North entered into a Term Sheet Purchase Agreement dated January 2022 with an affiliate of CCEP ("Bootstrap") to purchase 33.5 acres of land on which the facility would be built. ECF No. 79 at 6. The Term Sheet required Compute North to deposit $3,130,380.00 in escrow. ECF No. 79 at 6. Compute North deposited the $3,130,380.00 in escrow on February 4, 2022. ECF No. 79 at 6.

In March 2022, Bootstrap submitted a formal bid proposal to Compute North for the procurement and delivery of a transformer with a purchase price of $4,568,950.00 and an initial payment due at the end of March. ECF No. 79 at 7. Compute North timely made the initial payment. The transformer was never delivered.

In March 2022, Compute North contracted with CCEP to design and build the Facility (the "DB Contract"). The contract price was $24,250,000.00, which was increased to $25,713,494.60 by a May 2022 change order. ECF No. 79 at 7.

The DB Contract included representations and covenants relevant to Compute North's claims in this proceeding.

- CCEP was required to furnish a letter of agreement with AEP Texas to provide Compute North with 300 megawatts of interconnection capacity. The deadline to provide the AEP Agreement expired on May 15, 2022.

- CCEP was required to convey fee title of the Facility to Compute North not later than June 6, 2022.

- CCEP was required to submit applications for payment, along with supporting documentation, upon meeting certain payment milestones.

- CCEP agreed that documentation in the General Conditions of Contract furnished by CCEP and Compute North belong to Compute North.

- CCEP agreed to keep financial accounting consistent with GAAP principles with respect to its Work.

- CCEP was prohibited from transferring or assigning any part of the Work without Compute North's written consent, which can be withheld at its sole discretion.

- CCEP represented that it had adequate financial resources to fulfill its contractual obligations.

ECF No. 79 at 7–8. Compute North partially performed under the DB Contract; CCEP breached the contract. Compute North made total payments to CCEP in the amount of $16,237,227.00. ECF No. 79 at 9.

- CCEP did not deliver the AEP Letter Agreement by the May 15, 2022 deadline. ECF No. 79 at 9.

- CCEP did not transfer fee title to Compute North by the deadline. ECF No. 79 at 9.

On June 7, 2022, Compute North sent CCEP a notice of breach letter for misrepresentations regarding the AEP Letter Agreement and for CCEP's failure to deliver the Letter Agreement by the deadline. In response, CCEP sent Compute North a letter stating that it was halting performance for Compute North's failure to pay the amount due under the Change Order. CCEP also stated that its failure to deliver the Letter Agreement on time was due to excusable delay. ECF No. 79 at 10.

In August 2022, CCEP furnished a new AEP Letter Agreement draft, which Compute North found unsatisfactory due to material changes from previous drafts. CCEP then sent Compute North a "Notice of Intent to Terminate for Cause," based on Compute North's failure to

make an initial payment in the amount of $718,996.56.  ECF No 79 at 10.

Shortly after, Compute North sent CCEP a material breach notice for CCEP's failure to provide an AEP Letter Agreement and fee title conveyance by the deadlines.  ECF No. 79 at 11.

During the 90-day preference period, Compute North made transfers to Bootstrap in the aggregate amount of $682,096.90.  ECF No. 79 at 11.

On September 22, 2022, Compute North filed for chapter 11 protection under the Bankruptcy Code.  ECF No. 79 at 5.  Shortly after, CCEP and Bootstrap began pursuing a new partner to complete the Facility.  ECF No. 79 at 11.

In December 2022, Compute North sent a letter to the Defendants that it was terminating the DB Contract for cause due to the Defendant's breaches.  The Court entered an agreed order that the DB Contract was terminated as of December 20, 2022.  ECF No. 79 at 12.

The following year, the Defendants sold the Facility to Northern Data, a subsidiary of Bootstrap and CCEP, for $10,995,537.  Over $16,000,000 of the funds used to complete the project came from Compute North's payments to Bootstrap.  ECF No. 79 at 13.

An additional $4,500,00 of Compute North's money was diverted to build a separate project ("Navitas Facility"), which was sold to Navitas Energy LLC, then sold to Northern Data for about $11,000,000.00.  ECF No. 79 at 13.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b).  Venue is proper in this District pursuant to 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. 157(b)(2).  This dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## LEGAL STANDARD

The Court reviews motions under Federal Rule of Civil Procedure 12(b)(6) "accepting all well-pled facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). However, the Court will not strain to find inferences favorable to the plaintiff. *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

Motions to dismiss for failure to state a claim upon which relief can be granted "are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

To avoid dismissal under Rule 12(b)(6), the plaintiff must provide sufficient factual matter to state a claim for relief that is plausible on its face when accepting that factual matter as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard asks for more than "a sheer possibility that the defendant acted unlawfully." *Id.*; *see Lormand*, 565 F.3d at 232 ("[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007))).

Generally, fraud claims must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud. FED. R. CIV. P. 9(b); *see Red Rock v. JAFCO Ltd.*, No. 95-20368, 1996 WL 97549, at *3 (5th Cir. Feb. 16, 1996) (holding that plaintiff's allegations did not satisfy Rule 9(b) where they

failed to allege the time, place, or content of any misrepresentations). However, the requirements for pleading actual fraud in the context of veil-piercing are "less burdensome than those for establishing fraud." *Weston Grp. V. Sw. Home Health Care, LP*, No. 3:12-CV-1964-G, 2014 WL 940329, at *2 (Bankr. N.D. Tex. Mar. 11, 2014). Because actual fraud requires showing "dishonesty of purpose or intent to deceive," actual fraud is evaluated by Rule 9(b)'s standard in part as follows: "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). But the complaint need not plead state with *particularity* the circumstances constituting fraud. *See Weston Grp.*, 2014 WL 940329, at *2 (evaluating actual fraud under Rule 12(b)(6)).

## DISCUSSION

The Defendants seek dismissal of Compute North's claims for unjust enrichment, 11 U.S.C. § 542 turnover, and alter ego/veil piercing. The Defendants also contend that Compute North's claims against Bootstrap are barred by res judicata and that Compute North failed to preserve its unjust enrichment and alter ego claims under its Confirmed Plan. The arguments will be taken in turn.

### I. MONEY HAD AND RECEIVED/ UNJUST ENRICHMENT

Compute North brings claims for breach of contract and unjust enrichment. The Defendants assert that Compute North's unjust enrichment claim fails as a matter of law because a valid and enforceable contract covers the subject matter of the claims. Compute North concedes that a valid contract exists.

When an express contract covers the subject matter of the dispute, there generally can be no recovery under a quasi-contract theory such as unjust enrichment. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). But there are exceptions to this general rule. Texas courts permit recovery for unjust enrichment, despite existence of an express contract, under limited circumstances: for example, "when a plaintiff partially performs either a construction

contract or a contract that is unilateral in nature, or when a plaintiff has partially performed an express contract, but because of the defendant's breach, the plaintiff is prevented from completing the contract." *See Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 724 (Tex. Civ. App.— Houston 2011); *Truly v. Austin*, 744 S.W.2d 934, 936–37 (Tex. 1988) (holding that recovery in quantum meruit is allowed when a plaintiff has partially performed on an express contract); *Pasadena Assoc. v. Connor*, 460 S.W.2d 473, 580 (Tex. Civ. App.— Houston 1970) (restoring money paid under a contract, "which was never completed and from which no benefits were received"). "Unlike other contractual damages, restitution focuses on forcing the defendant to disgorge benefits that it would be unjust to keep, rather than on compensating the plaintiff." *City of Harker Heights, Tex. V. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex. Civ. App.—Austin, 1992).

Here, the Design Build Contract was not fully performed. Compute North paid the Defendants $20,319,928.00 in connection with the Project and received nothing in return. The Defendants used the funds to complete and sell the Facility for their own benefit. Compute North seeks disgorgement and return of $16,237,227.00 [the other $4,500,000.00 having been diverted to Navitas]. These allegations, if proven true, support a colorable claim for unjust enrichment.

Dismissal is denied for this count.

## II.   TURNOVER

Defendants argue that Compute North's claim should be dismissed for failure to plead any legal or equitable interest in the Bootstrap Facility and in the Navitas Facility. To be clear, both facilities were sold post-petition. Compute North is seeking turnover of the proceeds from the sale of both properties.

Turnover under § 542 requires identifiable and undisputed estate property. *See Highland Cap. Mgmt. L.P. v. Dondero (In re Highland Cap. Mgmt. L.P.)*, No. 21-03003, 2021 WL 2850562, at *5 (Bankr. N.D.

Tex. July 7, 2021) (holding that collection on a disputed debt does not fall under § 542's purview "absent a judgment or a stipulation resolving the dispute as to the indebtedness").

Here, there is a bona-fide dispute between the parties on whether Compute North has an equitable interest in the proceeds of the sale of both properties. Turnover is not the proper mechanism for Compute North's requested relief.

The turnover claim is dismissed with prejudice.

### III.     ALTER EGO/VEIL-PIERCING

CCEP argue that Compute North's claims for alter ego/piercing the corporate veil fall short because the Complaint fails to allege actual fraud.

TEX. BUS. ORGS. CODE §§ 21.223, .224, provide the exclusive basis for imposing contractual liability on a member of a limited liability company. To pierce the veil in a breach of contract case, a plaintiff must demonstrate that the member used the entity for "the purpose of perpetrating and did perpetuate an actual fraud on the [plaintiff] primarily for the direct personal benefit" of the member. TEX. BUS. ORGS. CODE § 22.223.

Actual fraud is defined as "involv[ing] dishonesty of purpose or intent to deceive." *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 442 (5th Cir. 2013) (citation omitted). "Courts may deduce fraudulent intent from all of the facts and circumstances." *Id.*

Compute North alleges that CCEP was used as a shell corporation to obtain Compute North's payments despite knowing that CCEP lacked financial resources to perform under the DB Contract. CCEP never maintained its own bank account and commingled property with Bootstrap. Bootstrap owns CCEP and both share common management. According to the Complaint, Bootstrap received and controlled all funds that Compute North paid under the DB Contract and diverted those funds to projects unrelated to the DB Contract. Compute North asserts that Bootstrap retained the sale proceeds and profits and did not apply them to satisfy obligations owed to Compute North. According to

Compute North, Bootstrap used CCEP as a conduit to benefit itself with Compute North's money.

These factual allegations are sufficient at the Rule 12(b)(6) stage to support a plausible inference of actual fraud under Texas law. Dismissal is denied as to Compute North's alter ego/veil piercing claim.

### IV.   RES JUDICATA

The Defendants contend that Compute North's claims against Bootstrap are barred under res judicata, because this Court allowed Bootstrap's proof of claim. The parties agree that the allowance of the claim was a final judgment but disagree whether it has preclusive effect on Compute North's claims in this proceeding. It does not.

Res judicata applies when: "1) both cases involve the same parties; 2) the prior judgment was rendered by a court of competent jurisdiction; 3) the prior decision was a final judgment on the merits; and 4) the same cause of action is at issue in both cases." *In re Baudoin*, 981 F.2d 736, 740 (5th Cir. 1993).

The first three prongs are not contested. The critical issue is "whether the two actions under consideration are based on 'the same nucleus of operative facts." *In re Intelogic Trace, Inc.*, 200 F.3d 382, 386 (5th Cir. 2000) (quoting *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990)). Under this test, courts compare factors such as: "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Test Masters Educ. Serv., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2009).

This is not a close call. The factual predicates for Bootstrap's proof of claim and the present adversary proceeding are vastly different. The previous claim-allowance process concerned Bootstrap's entitlement to payment for the purchase of a transformer. ECF No. 27 at 4. This instant case concerns factual allegations of Bootstrap's diversion of estate property for the construction of two data centers through the control of an affiliate corporation. These are two distinct disputes arising from different operative facts.

The Defendants further assert that Compute North was required to bring its claims for preference, fraudulent transfer, and breach of contract in its objection to Bootstrap's claim. ECF No. 110 at 9. The Court disagrees.

FED. R. CIV. P. 13 governs compulsory counterclaims. Bankruptcy Rule 7013 incorporates Civil Rule 13 only for adversary proceedings. A claim objection is not an adversary proceeding because it does not require a complaint and summons. *See* FED. R. BANKR. P. 3007.

Compute North was not required to assert its preference, fraudulent transfer, or breach of contract claims in its objection to Bootstrap's claim because those causes of action must be brought by adversary proceeding under Bankruptcy Rule 7001.

Compute North's claims against Bootstrap are not precluded.

## V. PRESERVATION OF CLAIMS

Lastly, the Defendants argue that Compute North's quasi contract and alter ego claims should be dismissed because Compute North failed to preserve these claims in the Confirmed Plan.

"For a debtor to preserve a claim, the plan must expressly retain the right to pursue such actions. The reservation must be specific and unequivocal." *In re Tex. Wyo. Drilling, Inc.*, 647 F.3d 547, 550 (5th Cir. 2011) (citation omitted). Absent sufficient reservation in the plan and the disclosure statement's language, the debtor has no standing to pursue a claim that the estate owned before it was dissolved. *Id.*

The Court reviewed the lengthy section dedicated to Compute North's causes of action against Bootstrap and CCEP in the Plan Supplement located at Case No. 22-90273, ECF No. 843-1 at 2 and 6. Both the Plan itself and page 2 of the Second Amended Schedule of Retained Causes of Action retain and authorize enforcement of the listed claims. The identified claims on page 6 are specific and unequivocal with respect to the quasi contract and alter ego claims.

Dismissal is denied.

## CONCLUSION

The § 542 turnover claim will be dismissed with prejudice. Dismissal will be denied to the rest of the claims. A separate order will be issued.

SIGNED 12/11/2025

_____
Marvin Isgur
United States Bankruptcy Judge